In the

# United States Court of Appeals
## for the Seventh Circuit

————————————

No. 21-1463

DONALD V. SNOWDEN,

*Plaintiff-Appellant,*

*v.*

JEREMY HENNING,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:19-cv-01322-JPG — **J. Phil Gilbert**, *Judge.*

————————————

ARGUED NOVEMBER 2, 2021 — DECIDED JUNE 27, 2023

————————————

Before SYKES, *Chief Judge*, and FLAUM and JACKSON-AKIWUMI, *Circuit Judges*.

SYKES, *Chief Judge*. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied damages remedy against federal officers for certain constitutional violations. *Bivens* involved a claim for damages against federal narcotics agents for alleged Fourth Amendment violations stemming from a warrantless search, arrest, and unreasonable

use of force against the plaintiff in his home. The Court later extended the *Bivens* remedy to two additional contexts: a claim against a member of Congress under the Fifth Amendment for workplace sex discrimination, *Davis v. Passman*, 442 U.S. 228 (1979), and a claim against federal prison officials under the Eighth Amendment for failure to provide adequate medical care, *Carlson v. Green*, 446 U.S. 14 (1980). Since then, however, the Court has consistently refused to authorize new *Bivens* claims. Today, extending the *Bivens* cause of action is a "'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

In recent years, the Court has emphasized that creating new causes of action is the prerogative of Congress, not the federal courts. To guard against encroachments on legislative authority, the Court has fashioned a two-step framework for evaluating *Bivens* claims. The first step considers whether the claim arises in a new context. The context is new if the claim is different in a "meaningful way" from an earlier *Bivens* claim authorized by the Court. *Id.* at 139. If the context is not new, then the claim may proceed. But if the context is new, then the analysis proceeds to the second step, which asks whether "special factors" counsel against authorizing a *Bivens* remedy. *Id.* at 136.

This case requires us to survey the evolving *Bivens* landscape. While staying at a hotel, Donald Snowden received a call from the front-desk clerk asking him to visit the lobby to pay for the room. Special Agent Jeremy Henning with the Drug Enforcement Administration ("DEA") awaited Snowden's arrival; a warrant had been issued for his arrest. According to Snowden, Agent Henning pushed him to the

ground and—unprovoked—punched him several times in the face. Snowden suffered two black eyes and a left orbital fracture.

Snowden sued Agent Henning, bringing a Fourth Amendment *Bivens* claim for use of excessive force during the arrest and a state-law claim for battery. The district judge dismissed the *Bivens* claim, concluding that it presents a new context and that special factors counseled against extending *Bivens* here. The judge dismissed the state-law battery claim without prejudice, and Snowden appealed.

We resolve this case at step one of the *Bivens* inquiry. Snowden's claim does not arise in a new context. While the Supreme Court has strictly limited the reach of *Bivens*, it has left the door open for at least some claims to proceed— provided, however, that the claim is not meaningfully different from *Bivens* itself (or one of the other two cases in which the Court recognized an implied remedy). A difference is "meaningful" when it involves a factual distinction or new legal issue that might alter the policy balance that initially justified the implied damages remedies in the *Bivens* trilogy.

If the case involves new or different considerations from an already-recognized *Bivens* action, then the inquiry moves to step two and separation-of-powers considerations are decisive. As the doctrine now stands, under the "special factors" inquiry, a court cannot extend *Bivens* to a new context if "there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 142 S. Ct. 1793, 1805 (2022) (internal quotation marks omit-

ted). Few (if any) new claims will survive this test. After all, creating new causes of action is primarily a legislative task.

Still, some claims may proceed under a straightforward application of *Bivens* itself. Snowden's case presents such a claim. We therefore reverse.

## I. Background

We recount the facts as alleged in Snowden's complaint, accepting the well-pleaded allegations as true at this stage of the litigation. *Engel v. Buchan*, 710 F.3d 698, 699–700 (7th Cir. 2013).

On September 12, 2019, Snowden was staying at the Quality Inn in Carbondale, Illinois. He received a call from the front-desk clerk, who asked him to visit the lobby to pay for the room. The clerk knew that Agent Henning was present to arrest Snowden. An arrest warrant had been issued after a federal grand jury indicted Snowden for methamphetamine distribution.[1]

When Snowden arrived in the lobby, Agent Henning rushed at him, pushing him into a door and onto the ground. Snowden did not resist, yet Henning punched him several times in the face. Snowden suffered two black eyes and a fractured left eye socket during the arrest.[2]

---

[1] Agent Henning attached the arrest warrant to his motion to dismiss. We may take judicial notice of matters of public record when reviewing a complaint. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022).

[2] Snowden claims that the U.S. Attorney's Office has video evidence confirming his account. He sought production of the video, but the judge denied the request as premature because the case had not yet proceeded to discovery on the merits.

Several months later while in pretrial detention on the methamphetamine charge, Snowden filed a pro se complaint against Agent Henning alleging a Fourth Amendment claim for "grossly excessive force" and a battery claim under Illinois law. Snowden also named the DEA, Quality Inn, and the front-desk clerk as defendants. The claims against the DEA targeted the agency's training and supervision practices, and the claims against Quality Inn and the front-desk clerk alleged that the hotel and its staff obstructed justice.

Because Snowden filed a civil action against the government while in federal pretrial detention, the judge screened the pleading under the Prison Litigation Reform Act ("PLRA"). *See* 28 U.S.C. § 1915A. He construed the complaint to allege a Fourth Amendment *Bivens* claim against Henning for use of excessive force during Snowden's arrest. The judge allowed that claim to move forward, and he also exercised supplemental jurisdiction over the state-law battery claim against Henning. He dismissed the claims against the DEA, Quality Inn, and the front-desk clerk.

Agent Henning moved to dismiss the *Bivens* claim for failure to state a claim. He argued that this case presents a new context and that special factors counseled against extending *Bivens*. Henning also moved to convert the battery claim to one under the Federal Tort Claims Act ("FTCA" or "the Act") and substitute the United States as the defendant. He explained that the FTCA provides the exclusive remedy for injuries stemming from a federal employee's violation of state law while acting within the scope of his employment and that the United States is the only proper defendant under the Act. The government certified that Agent Henning

acted within the scope of his employment during the events in question.

Snowden opposed both motions. In a pro se filing, he argued that the constitutional claim, which was based on allegations of unreasonable force during an arrest, was not meaningfully different from *Bivens*. He did not explain his opposition to the motion to convert the battery claim to one under the FTCA and substitute the United States as the defendant.

The judge dismissed the *Bivens* claim against Agent Henning. He identified certain factual distinctions between Snowden's case and *Bivens*, including the location of the arrest, the presence of an arrest warrant, and the number of officers involved in the incident. He also identified what he characterized as a legal difference between the Fourth Amendment rights at issue in Snowden's case and in *Bivens*. He described *Bivens* as "primarily" involving allegations concerning the "rights of privacy" implicated in an unlawful warrantless home entry, arrest, and search, while Snowden alleged a violation of his "right to be free from excessive force incident to an otherwise lawful arrest." These differences led the judge to conclude that Snowden's case presents a new *Bivens* context. The judge then held that special factors weighed against recognizing a *Bivens* claim here—namely, the availability of an alternative remedy under the FTCA and the absence of a damages remedy against federal officers in the FTCA or PLRA.

Finally, the judge declined to substitute the United States on the battery claim and convert the claim to one under the FTCA. He explained that Snowden had pursued a *Bivens* claim against Agent Henning and should be able to decide

for himself if he would also like to bring an FTCA claim against the United States as a substitute for the state-law tort claim.

With the *Bivens* claim dismissed, no federal claim remained. The judge relinquished jurisdiction over the battery claim, dismissing it without prejudice.

## II. Discussion

Snowden limits his appeal to the dismissal of his *Bivens* claim against Agent Henning. The judge's other rulings—dismissing the other defendants at screening and declining to convert the battery claim to one under the FTCA—are not at issue here.

The practice of recognizing implied damages remedies against federal officials for alleged constitutional violations had a short run at the Supreme Court. In its 1971 decision in *Bivens*, the Court authorized a damages remedy for a plaintiff who alleged that federal narcotics officers violated his Fourth Amendment rights by entering and searching his home without a warrant and arresting him using unreasonable force. 403 U.S. at 389–90. Nearly a decade later, the Court recognized an implied damages action against a member of Congress for workplace sex discrimination in violation of the Fifth Amendment. *Davis*, 442 U.S. at 230, 248–49. The following year, the Court extended *Bivens* again, approving a cause of action for damages against federal prison officials for failure to provide adequate medical care in violation of the Eighth Amendment. *Carlson*, 446 U.S. at 16, 19.

*Carlson* marked the end of the line. Since 1980 the Court has consistently rejected requests to recognize additional

*Bivens* claims. *See Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020) (citing Supreme Court cases after *Carlson* that rejected *Bivens* claims). And in recent years the Court has made explicit what had been implicit—"that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at 135 (quoting *Iqbal*, 556 U.S. at 675).

*Bivens* emerged at a time when courts freely implied causes of action under federal statutes in the name of legislative purpose. The Court later rejected statutory remedies created through "judicial mandate," reinforcing that a cause of action must be supported by congressional intent expressed clearly in statutory text. *Id.* at 133. The Court likewise stressed that "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Id.* The Court's most recent *Bivens* case makes the point more emphatically: "[C]reating a cause of action is a legislative endeavor." *Egbert*, 142 S. Ct. at 1802.

But the Court has stopped short of overruling the *Bivens* trilogy. Instead, it has fashioned a two-step framework to ensure that the judiciary does not further encroach on legislative authority under the banner of *Bivens*. The first step asks whether the plaintiff's case presents "a new *Bivens* context." *Id.* at 1803 (quoting *Abbasi*, 582 U.S. at 139). If it does not, then the plaintiff's claim may proceed. But if the claim arises in a new context, then the court must consider whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action

to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernández*, 140 S. Ct. at 743).

We focus here on the first step—whether Snowden's *Bivens* claim arises in a "new context." A context is "new" if "the case is different in a meaningful way from previous *Bivens* cases" decided by the Supreme Court. *Abbasi*, 582 U.S. at 139. The Court has identified some differences that qualify as "meaningful":

> the rank of the officers involved; the constitu-tional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of dis-ruptive intrusion by the Judiciary into the func-tioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140. A context may also be "new" when a "new catego-ry of defendants" is involved. *Hernández*, 140 S. Ct. at 743 (quotation marks omitted).

Several cases show these principles in practice. In *Abbasi* illegal immigrants who were detained in a special detention unit in the aftermath of the September 11 terrorist attacks brought a damages claim against senior Department of Justice officials and prison wardens for harsh conditions in the unit. Seeking a remedy under *Bivens,* they pointed to

"significant parallels" with *Carlson*, which had recognized a cause of action under the Eighth Amendment for inadequate prison medical care. *Abbasi*, 582 U.S. at 147. The Court held that the case represented an extension of *Bivens* to a new context, noting that the claim implicated a different constitutional right (the Fifth Amendment vs. the Eighth Amendment), that alternative remedies might have been available, and that the PLRA suggested that Congress "chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* at 148–49. These differences "easily satisfied" the new-context test. *Id.* at 149.

The Court followed a similar path in *Hernández*, which involved a cross-border shooting in which a Border Patrol agent shot and killed a Mexican teenager who had been running back and forth across the U.S.–Mexico border. 140 S. Ct. at 739–40. The victim's parents sued the agent, relying on *Bivens* and *Davis* to support claims under the Fourth and Fifth Amendments. The Court explained that a *Bivens* claim may present a new context "even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id.* at 743. And "[a] cross-border shooting is by definition an international incident"—a "world of difference" from the claims recognized in *Bivens* and *Davis*. *Id.* at 744. That difference was significant: it raised foreign-relations and border-security concerns, which risked "disruptive intrusion by the Judiciary into the functioning of other branches." *Id.* (quoting *Abbasi*, 582 U.S. at 140). The Court held that "multiple factors" counseled against extending *Bivens*, all of which could be "condensed to one concern—respect for the separation of powers." *Id.* at 749.

*Minneci v. Pollard*, 565 U.S. 118 (2012), is another example. Prisoners sued employees of a privately operated federal prison seeking damages for inadequate medical care in violation of the Eighth Amendment. The plaintiffs argued that *Carlson* governed and authorized their *Bivens* claim. The Court responded that the defendants' status as "personnel employed by a *private* firm" was a "critical difference." *Id.* at 126. A prisoner could not ordinarily sue a federal employee for damages in a state-law tort action, but a state-law tort claim is an available remedy against an employee of a privately operated prison. The Court added that an earlier case had foreclosed the argument that a private prison-management firm should be treated as a "federal agent." *Id.* at 126–27 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 & n.4 (2001)). Because the context was new and the plaintiffs had an adequate remedy at state law, the Court declined to imply a *Bivens* remedy.[3] *Id.* at 131.

---

[3] It's worth noting that the Court's *Bivens* cases do not uniformly adhere to the two-step framework. Sometimes the Court declines to imply a *Bivens* remedy because Congress had already created a remedial scheme. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 380–90 (1983). Sometimes it declines to extend *Bivens* because of the sensitive domain involved, like the military. *See, e.g.*, *Chappell v. Wallace*, 462 U.S. 296, 298–305 (1983). Still other cases decline to extend *Bivens* because a new category of defendant was present. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69–74 (2001). Though these cases do not formally follow the two-step framework, they resolve the *Bivens* question in a functionally similar way.

*Minneci* is much the same. The Court began by considering whether *Carlson* controlled because the plaintiffs brought a *Bivens* claim based on prison conditions. *Minneci v. Pollard*, 565 U.S. 118, 126–27 (2012). Looking to its precedent, the Court considered whether the case involved a new context. The Court then evaluated the adequacy of a state-law tort remedy, which is a special factor that might counsel hesitation in extend-

The distinctions that proved meaningful in *Abbasi*, *Hernández*, and *Minneci* are not exclusive. Here Snowden raises a Fourth Amendment claim, and the threshold question for us is whether his case is meaningfully different from *Bivens* itself—in the sense meant by the Court's "new context" caselaw. That a difference must be "meaningful" suggests that *some* degree of variation will not preclude a *Bivens* remedy. The Court has explicitly recognized this point: "Some differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context." *Abbasi*, 582 U.S. at 149.

We understand the Court's evolving *Bivens* guidance to suggest that a difference is "meaningful" if it might alter the policy balance that initially justified the causes of action recognized in *Bivens*, *Davis*, and *Carlson*. If a case involves facts or legal issues that would require reweighing the costs and benefits of a damages remedy against federal officials, then the difference is "meaningful" because we risk further encroachment on the legislative function rather than simply applying controlling Supreme Court precedent. Viewed another way, we're called on to apply a familiar mode of judicial reasoning to determine if the case before us fits

---

ing the *Bivens* remedy. *Minneci* basically maps onto the two-step framework.

On the other hand, sometimes the Court's cases do not explicitly address the "new context" inquiry because they do not need to—where, for example, the case raises a claim under a different constitutional provision (like the First Amendment) or presents an obviously distinct factual setting (like the military). These cases move straight to the analysis of special factors to determine whether to authorize a *Bivens* claim. *See, e.g.*, *Bush*, 462 U.S. at 378–90; *Chappell*, 462 U.S. at 298–305.

within the Court's still-valid—but now quite limited—precedent, with special solicitude to the separation-of-powers concerns identified by the Court.

This understanding accords with the cases we've just described. In *Abbasi* a damages remedy like the one recognized in *Carlson* might not be appropriate because the plaintiffs invoked a different constitutional right, had alternate remedies, and the PLRA suggested that Congress might not have wanted to extend *Carlson* to other prisoner-mistreatment claims. These differences, though "perhaps small," suggested that the factual and legal background had shifted enough from *Carlson* to warrant restraint. *Id.* The same was true in *Hernández*. A cross-border shooting implicates foreign-relations concerns that were not present in the everyday law-enforcement context of *Bivens*. That difference readily indicated that a court might weigh the propriety of an implied damages remedy differently than in *Bivens*. Finally, the presence in *Minneci* of a new class of defendant, subject to a state-law tort suit, signaled that the balance struck in *Carlson* did not apply. The availability of an adequate state-law remedy against a class of defendant not covered by the Court's *Bivens* trilogy could suggest that the differences are sufficiently meaningful to require careful consideration of separation-of-powers factors that counsel against a *Bivens* action.

Note that we speak not in absolute terms but in "mights" and "coulds" instead. That is because "our watchword is caution." *Hernández*, 140 S. Ct. at 742. If a court finds differences in a case that could upset a straightforward application of *Bivens* or *Davis* or *Carlson*, then the case presents a new *Bivens* context and the analysis moves to the "special

factors" inquiry. This understanding of the new-context requirement harmonizes the two steps in the Court's *Bivens* framework. In the first step we identify claims that entail "meaningful" differences from the claims at issue in the *Bivens* trilogy—i.e., factual distinctions and legal issues that might alter the cost–benefit balance that justified an implied damages remedy in those cases. In the second step we pay special attention to separation-of-powers concerns, considering whether "special factors" indicate that Congress is better equipped in the specific context to assess the costs and benefits of a damages remedy. An approach that sorts cases in the heartland of *Bivens* from those that might introduce separation-of-powers concerns makes sense because of the deference owed to Congress, which "is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Id.* (quoting *Abbasi*, 582 U.S. at 134).

The Fourth Circuit has distilled the new-context inquiry in much the same way. The court explained: "[A] new context may arise if *even one* distinguishing fact has *the potential to implicate separation-of-powers considerations.*" *Tate v. Harmon*, 54 F.4th 839, 846 (4th Cir. 2022) (second emphasis added). And recent *Bivens* cases from other circuits also reflect this approach, finding a new context when there are separation-of-powers considerations different than those already present in the *Bivens* trilogy. *See Bulger v. Hurwitz*, 62 F.4th 127, 137–38 (4th Cir. 2023) (concluding that the *Bivens* claim arose in a new context because the plaintiff's claim implicated the Bureau of Prisons' "organizational policies, administrative decisions, and economic concerns inextricably tied to inmate transfer and placement determi-

nations"); *Dyer v. Smith*, 56 F.4th 271, 277–78 (4th Cir. 2022) (new context because TSA officers operate under a different legal mandate); *Tun-Cos v. Perrotte*, 922 F.3d 514, 523–25 (4th Cir. 2019) (new context because immigration enforcement concerns noncitizens, because of "broad policy concerns," and because ICE agents are a "new category of defendants"); *Mejia v. Miller*, 61 F.4th 663, 668–69 (9th Cir. 2023) (new context because "[t]he entire incident occurred on public lands managed by BLM and the National Park Service, a place where [the plaintiff] had no expectation of privacy"); *K.O. ex rel. E.O. v. Sessions*, No. 20-5255, 2022 WL 3023645, at *3–4 (D.C. Cir. July 29, 2022) (per curiam) (new context because the "case arises in the context of immigration detention" and because the claims "implicate new defendants," including "various high-level officials").

At the other end of the spectrum, a recent Fourth Circuit decision recognized that a *Bivens* claim remains viable if it *doesn't* present concerns that might caution against the application of a preexisting damages remedy. *Hicks v. Ferreyra*, 64 F.4th 156, 166–69 (4th Cir. 2023) (concluding that the *Bivens* claim did not present a new context because it involved "not an extension of *Bivens* so much as a replay of the same principles of constitutional criminal law prohibiting the unjustified, warrantless seizure of a person" (internal quotation marks omitted)).

Of course, just last term the Supreme Court emphasized just how narrow the path is for a *Bivens* claim to proceed. In *Egbert* the Court suggested that the two-step framework boils down to one question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. Writing on a blank

slate, we might say that it is *never* appropriate for a federal court to create an implied cause of action for damages under the Constitution. *See Abbasi*, 582 U.S. at 134 ("[I]t is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today."). But we operate within the current state of the doctrine, and the Court has said that its recent decisions are "not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Id.* Indeed, the Court has explained that "[t]he settled law of *Bivens* in th[e] common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere." *Id.* Because *Bivens* remains good law, at least for now, we continue to apply it.

On these understandings, we can identify no meaningful difference between Snowden's case and *Bivens* to suggest that he should not be able to pursue this excessive-force claim. Agent Henning operated under the same legal mandate as the officers in *Bivens*—the enforcement of federal drug laws. He is also the same kind of line-level federal narcotics officer as the defendant–officers in *Bivens*. Like Webster Bivens, Snowden seeks damages for violation of his rights under the Fourth Amendment; more specifically, both plaintiffs alleged that officers used unreasonable force in an arrest. And the legal landscape of excessive-force claims is well settled, with decades of circuit precedent applying the Supreme Court's test announced in *Graham v. Connor*, 490 U.S. 386 (1989). *See, e.g.*, *Doxtator v. O'Brien*, 39 F.4th 852, 860–62 (7th Cir. 2022); *Brownell v. Figel*, 950 F.2d 1285, 1292–93 (7th Cir. 1991). Officers have clear guidance on the level of force that is reasonable when arresting a suspect who

does not resist. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) ("An officer's use of force is unreasonable from a constitutional point of view only if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." (internal quotation marks omitted)); *Abbott v. Sangamon County*, 705 F.3d 706, 732 (7th Cir. 2013) (concluding that it had been "well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects").

Nor does allowing a *Bivens* claim here risk a "disruptive intrusion" into the "functioning of other branches." At the very least, the intrusion is no more disruptive than what *Bivens* itself already approved. Finally, Snowden's claim implicates no other contextual factor—whether a national security issue (*Hernández*), a different constitutional right coupled with alternative remedies (*Abbasi*), or a different class of defendant (*Minneci*)—that might lead us to move to the second step of the *Bivens* inquiry.[4] In short, consideration

---

[4] Agent Henning discusses other factors only when he addresses the second step of the *Bivens* analysis, but the factors he identifies also do not suggest that Snowden's claim arises in a new context. He points to the availability of a remedy under the FTCA. However, the statute does not displace a *Bivens* claim in the narrow cases where it is available. In *Carlson* the Court concluded that "victims of the kind of intentional wrongdoing alleged in this complaint shall have an action under FTCA against the United States *as well as* a *Bivens* action against the individual officials alleged to have infringed their constitutional rights." *Carlson v. Green*, 446 U.S. 14, 20 (1980) (emphasis added).

More recently the Court recognized that "Congress made clear that it was not attempting to abrogate *Bivens*," *Hernández v. Mesa*, 140 S. Ct. 735, 748 n.9 (2020), because it excepted "a civil action … brought for a violation of the Constitution of the United States" from the FTCA's

of the *Abbasi* factors points to the same conclusion: We do not risk arrogating a legislative function by allowing Snowden's *Bivens* claim to proceed.

Resisting this conclusion, Agent Henning argues that *Bivens* rests on "the right to be free of unreasonable warrantless search and detention in one's own home and arrest in the absence of probable cause." He describes Snowden's claim as rooted in "the right to be free of excessive force in the context of a lawful arrest in a public place pursuant to a warrant issued following a finding of probable cause." This argument overlooks that the claim in *Bivens* specifically included an allegation that "unreasonable force was employed in making the arrest." *Bivens*, 403 U.S. at 389.

Agent Henning also points to narrow factual differences to argue that Snowden's claim presents a new context distinct from *Bivens*. Drawing on the district judge's reasoning, he highlights that the alleged Fourth Amendment violations took place in different locations (a hotel lobby here, a home in *Bivens*); that he had a warrant (the officers in *Bivens* did not); and that he was the only officer involved (six officers participated in the arrest at issue in *Bivens*). These distinctions are not sufficient to affect the *Bivens* inquiry. Hotel or home, warrant or no warrant—the claims here and in *Bivens* stem from run-of-the-mill allegations of excessive force during an arrest. The number of officers present might prove relevant to whether the force applied was reasonable, but as

---

exclusivity provision, 28 U.S.C. § 2679(b)(2)(A). The provision was "not a license to create a new *Bivens* remedy in a context [the Court] ha[s] never before addressed" but "simply left *Bivens* where it found it." *Hernández*, 140 S. Ct. at 748 n.9. This case does not present a new *Bivens* context, so the Act does not come into play.

a separation-of-powers matter, the presence of one officer rather than six is not meaningful. This case does not involve a different class of defendant—a new context that indeed might require more careful consideration. *See, e.g.*, *Minneci*, 565 U.S. at 126–31; *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994). In short, the factual distinctions Henning emphasizes are of the "trivial" kind that "will not suffice to create a new *Bivens* context." *Abbasi*, 582 U.S. at 149.

Finally, Agent Henning seeks support in *Oliva v. Nivar*, 973 F.3d 438 (5th Cir. 2020). But *Oliva* involved a *Bivens* claim based on an allegation of excessive force that occurred at a security checkpoint in a Veterans Affairs hospital, and the distinctions there were meaningful. *Id.* at 440–41. The case involved a different type of officer with a different law-enforcement mandate: a VA police officer enforcing hospital safety (in contrast to narcotics officers carrying out a drug investigation). The seizure itself occurred in a government facility, a space that is meaningfully different than a private home or building for the purpose of a judicially implied damages remedy. The Fifth Circuit concluded that these distinctions mattered. The context therefore was new, and the court held that special factors warranted restraint. *Id.* at 443–44. The threat of a damages award against VA security officers could cause more lax enforcement of safety protocols in a government building. In other words, the circumstances in *Oliva* implicated the kind of policy balancing better left to Congress. Snowden's *Bivens* claim raises no such distinctions.

In the end, although the Supreme Court has narrowly cabined the *Bivens* remedy and consistently refused to recognize new claims, we cannot decline to apply "the

settled law of *Bivens*" unless Snowden's case is meaningfully different—i.e., different in a way that implicates the separation-of-powers calculus. *Abbasi*, 582 U.S. at 134, 139–40. There is no such difference here. *Bivens* may one day be reexamined; indeed, two Justices have proposed that it be abandoned. *Egbert*, 142 S. Ct. at 1809–10 (Gorsuch, J., concurring); *Hernández*, 140 S. Ct. at 750–53 (Thomas, J., concurring). But our role is to apply the Court's caselaw as it stands now. Because Snowden's claim is not meaningfully different than *Bivens* itself, it may proceed.

Reversed